## MYERS *v.* ORR

No. 40803     May 12, 1958     102 So. 2d 674

*Roger C. Landrum,* Columbus, for appellant.

L. F. Sams, West Point, for appellee.

GILLESPIE, J.

Appellee, H. H. Orr, filed his bill in chancery against appellant, Benson L. Myers, Jr., to establish the south and west lines of his residence lot in West Point, Mississippi. Appellee's lot abuts Clark Street on the east. As determined by the final decree, appellee's lot ran north and south along the west side of Clark Street a distance of 159 feet and had a depth west of Clark Street of 81.4 feet for the south line and 80.8 feet for the north line. Appellee's residence was situated in the southwest corner of this lot, the west end of his house being 6.4 feet from the west line of the lot as fixed by the decree, and the south side of his house being about 10.9 feet north of the south lot line as fixed by the final decree. Appellant owned the property lying south and west of appellee's lot. The lot lines as determined by the chancellor were in accordance with appellee's contentions. Appellant contended that the true and agreed lines were as follows: The south line ran within three feet of appellee's residence, and the west line through a porch that appellee's predecessor

had added to the west end of the house and which porch had been extended by appellee about eighteen inches.

Appellant's father, Benson L. Myers, Sr., owned all of the property now claimed by both parties to this suit until 1919, when Myers, Sr., conveyed to A. B. Norris the residence now owned by appellee. The heirs of A. B. Norris conveyed to appellee on October 23, 1944. In 1936, B. L. Myers conveyed the property lying west and south of that conveyed to A. B. Norris, and now owned by appellee, to his wife, Mrs. Benson L. Myers, Sr., who, on November 13, 1952, conveyed said land to her son, Benson L. Myers, Jr., appellant, reserving a life estate. Mrs. Benson L. Myers, Sr., was named as a defendant in this suit but has since died, and appellant is now the owner of all the land lying south and west of appellee's lot.

Both parties attempted to establish their respective contentions by surveys and maps related to the calls of the deed from Myers, Sr., to A. B. Norris. Nine maps were introduced, including city maps and surveys of the particular lot involved. Nearly forty witnesses testified, about half for each side.

The chancellor held that the maps on which the deeds were based contained errors and that the distances shown on the maps did not equal the distances found by actual measurements on the ground. It was his opinion that the controversy had to be resolved on the proof of adverse possession. The chancellor then resolved the conflicts in the testimony in favor of appellee and after viewing the property entered a decree sustaining appellee's contentions.

■■ ■ Appellant first contends that the lower court erred in disregarding the survey of appellant's surveyor Clisby, and proceeds to show why the Clisby survey was correct. There is no occasion for this Court to determine whether the Clisby survey was correct, for it is fallacious to argue that the chancellor had to follow the survey, assuming it to be correct. He found that appellee and

his predecessors in title had for more than thirty years been in adverse possession up to a certain line south of the house and up to a certain line west of the house, and these were the lines fixed by him in the final decree. Upon this finding of fact, it would have been error to determine the lines on the basis of the deeds and the Clisby survey, even if the survey was correct. Appellant's record title, perfect though it may be, must yield to adverse possession; otherwise one could never acquire title by adverse possession against another holding a good record title.

Appellant's second and final contention is that the possession of appellee and his predecessors in title was permissive. This contention is based on the circumstances next stated. Appellant testified that he was nine years old when his father, Benson L. Myers, Sr., conveyed to A. B. Norris the house and lot now claimed by appellee, and that he was present when his father had a survey made of the lands conveyed to Norris; that Myers, Sr. and Norris, in the presence of appellant, agreed that the true south line of the lot so conveyed to Norris ran three feet south of the residence and the west line ran three feet west of the residence (a porch about six feet east and west was later added to the west end of the residence); that Myers, Sr., declined to sell Norris any more land but agreed that Norris might have permission to use an additional three feet on the south and west sides of the lot so as to have room to walk around his house; that some time before World War II, after Mrs. Myers, Sr., had acquired title and conveyed to appellant reserving a life estate, the property west and south of appellee's lot, A. B. Norris and Myers, Sr., renewed the 1919 agreement that Norris could use three feet additional on the south and west of the residence, and that this agreement was made in appellant's presence; that another agreement was made in reference to a fence location; that after appellee bought the property, appellant showed appellee the true line and told him of the previous agree-

ment about use of three additional feet on both sides of the house. Myers, Sr., and Norris were both dead at the time of the trial.

But appellant is mistaken when he contends that there is no evidence contradicting appellant's testimony with reference to the alleged agreements for Norris to have permissive use of parts of Myers' property. Witness J. E. Rambo rented and lived on the Norris property from about 1939 to 1944, and he testified that the concrete wall, which appellee contends is the true south line of his property, was erected by Benson L. Myers, Sr., about 1941, and that Myers, Sr., stated that was the line. Rambo also testified that Norris in effect confirmed the understanding. Appellee's testimony is in conflict with that of appellant as to the latter showing the former where the lines were.

The chancellor rejected appellant's testimony about these agreements, and he had sufficient reason to do so.

█ █ The record reveals another unfortunate land line case with such bitter feeling that it erupted in gun play. The chancellor heard and sifted the conflicting evidence and found that appellee and his predecessors in title had acquired title to the disputed strips by more than thirty years adverse possession. His decree was amply supported by the testimony. No reversible error appears in the record.

Affirmed.

*McGehee, C. J.*, and *Hall, Kyle* and *Holmes, JJ.*, concur.